**SHER TREMONTE LLP**

August 8, 2025

**BY ECF**

The Honorable Hector Gonzalez
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States v. Courtney*, 25-cr-23 (HG)

Dear Judge Gonzalez:

      We represent Storm Courtney. We intend to argue principally orally as to the evidence adduced at the August 6, 2025 suppression hearing, but we write to address two issues in advance of oral argument.

Standing to Challenge the Search of Apartment 3C, 129 Lorraine Street

      The undisputed facts presented at the suppression hearing establish that Mr. Courtney was arrested pursuant to an arrest warrant on January 23, 2025 in the third floor hallway of 129 Lorraine Street after exiting apartment 3C. After Mr. Courtney's arrest, law enforcement officers forcibly entered apartment 3C and searched the apartment without a warrant based on NYCHA's representation that apartment 3C was "vacant." In his motion, Mr. Courtney argued that he had a reasonable expectation of privacy in apartment 3C where he had in fact been staying, and that the law enforcement officers who conducted the warrantless search of apartment 3C knew that Mr. Courtney had been staying there. Suppl. Mot. to Suppress, ECF No. 26 at 3. In response, the government argued that Mr. Courtney was trespassing in apartment 3C and thus had no standing to challenge the search. Opp'n, ECF No. 34 at 33-35.

      Before the hearing began, the Court heard oral argument concerning the government's standing objection. The Court through a colloquy with defense counsel established that Mr. Courtney indisputably did not have permission from NYCHA, the landlord, to reside in apartment 3C, Tr. 14:13-16, that he did not have permission from a leaseholder to reside in apartment 3C at the time of the search, Tr. 14:20-15:5, that the door to apartment 3C was locked and was opened by police with a battering ram, Tr. 16:14-24. The Court stated that it was Mr. Courtney's burden to identify "the lawful tenant of that apartment," and that if another person residing in apartment 3C who is "not a lawful tenant" invited Mr. Courtney to stay there, then Mr. Courtney lacks standing. Tr. 17:1-18:20. The Court concluded that because "NYCHA did not give [Mr. Courtney] or his associates permission to be in that apartment and there was no other lawful tenant of that apartment

The Honorable Hector Gonzalez
August 8, 2025

that you've presented to me who could have given [Mr. Courtney] permission to be in the apartment" Mr. Courtney has "trespasser status" and "does not have a reasonable expectation of privacy in apartment 3C." Tr. 22:2-12. Consequently, the government did not call a witness from NYCHA. Tr. 21:18-22.

Mr. Courtney respectfully maintains his objection to the Court's decision that he lacks standing to challenge the search of apartment 3C. Mr. Courtney acknowledges the language in *United States v. Sanchez*, 635 F.2d 47 (2d Cir. 1980), that "a mere trespasser has no Fourth Amendment protection in premises he occupies wrongfully," *id.* at 64, but that was about a *vehicle* stop, and the Second Circuit made that observation in discussing precedent that an individual cannot assert a privacy interest in a car that he does not have permission to drive. The court relied on *Rakas v. Illinois*, 439 U.S. 128 (1978), a case also concerning whether the defendant had a privacy interest in a vehicle he had no legal right to drive. *Id.* at 140.

Whether a person is a trespasser in *real property*, however, is a matter of state law. *See In re WorldCom, Inc.*, 320 B.R. 772, 777 (Bankr. S.D.N.Y. 2005) ("state law controls" question of whether action of defendant constituted trespass). Pursuant to New York's Real Property Actions and Proceedings Law § 711, "[a] tenant shall include an occupant of one or more rooms in a rooming house or a resident, not including a transient occupant, of one or more rooms in a hotel who has been in possession for thirty consecutive days or longer. A tenant shall not include a squatter." In other words, an occupant of an apartment is a tenant, not a squatter, if the occupant has lived there for thirty consecutive days or longer, *whether or not the occupant has a lease*. A squatter, on the other hand, is an occupant who "enters or intrudes upon real property without the permission of the person entitled to possession," which in addition to an owner, can be "an owner's agent or a person entitled to possession"—i.e. another tenant, whether or not that person has a lease. *Id.* Indeed, to maintain summary proceedings in housing court against an alleged squatter, "it is essential that the occupant sought to be removed, or the person to whom the occupant has succeeded, intruded into or squatted upon the premises, in the first instance, without permission of the owner, his predecessor in title or one entitled to possession." *Robbins v. De Lee*, 34 A.D.2d 870, 870 (3d Dept. 1970).

As noted above, the Court precluded factual development on this issue based on counsel's concession that Mr. Courtney did not have permission from NYCHA or a leaseholder to occupy the apartment, but, respectfully, whether such occupancy was lawful under state law is a more complex and factually-specific inquiry. Accordingly, Mr. Courtney preserves his position for appellate review.

The Government's Refusal to Furnish Materials Concerning Mr. Courtney, Including a Photograph Purportedly of Him, That Detective Harkins Claims to Have Reviewed Prior to Stopping Mr. Courtney

In Detective Harkins's testimony, he stated that he was able to identify Mr. Courtney based on his review of "department records and viewing photographs of him," Tr. 152:15-18, that he knew Mr. Courtney and Mr. Valentin to be members of the Risk

2

The Honorable Hector Gonzalez
August 8, 2025

Takers, Tr. 54: 3-7, and that he knew of Mr. Courtney's "previous police interactions" and that "he had previously been convicted of a firearms charge," Tr. 74:3-11. The materials that Detective Harkins reviewed before November 19, 2024 that enabled him to identify Mr. Courtney and provided him with the aforementioned alleged information about Mr. Courtney were not produced to the defense in discovery. Following the hearing, the defense requested that the government furnish such materials immediately, given that it was relying in part on Detective Harkins's identification of Mr. Courtney to establish probable cause. The government refused to provide the evidence, stating that it had complied with its Rule 16 obligations, pointing to two documents produced in discovery concerning Mr. Courtney's criminal history both of which are dated Dec. 16, 2024.

Although Rule 16 speaks only of discovery for trial, its obligations are well-established to extend to suppression hearings either through Rule 16(a)(1)(E)(i) or as part of the Court's authority under Rule 57 to ensure fair process. *See United States v. Cross*, No. 07-CR-730 (DLI), 2009 WL 3233267, at *11 (E.D.N.Y. Oct. 2, 2009) ("Under Rule 16, [a defendant is] entitled to this discovery before the suppression hearing."); *United States v. Gerena*, 116 F.R.D. 596, 598 (D. Conn. 1987) (relying on Rulle 57 to order disclosure of expert reports at suppression hearing given that "the rationale behind the disclosure of expert reports prior to trial is equally applicable to the Title III suppression hearings in this case. Thus, in ordering the disclosure of expert reports for pretrial hearings, the Court merely extends the salutory principles of limited openness and fairness embodied in Rule 16 as it applies to proceedings at trial."); *see also United States v. Thomas*, 726 F.3d 1086, 1096 (9th Cir. 2013) (noting circuit precedent requiring production of dog field test results prior to suppression hearing); *United States v. Louis*, No. 04 CR, 203 (LTS), 2005 WL 180885, at *2 (S.D.N.Y. Jan. 27, 2005) (citing government's argument that Rule 16, not 17(c), governs discovery at suppression hearing).

Under either rationale, the evidence a witness purportedly relied on for his identification of the defendant is covered by Rule 16. In *Cross*, for example, an officer testified about a photo array he conducted in which the defendant was identified. But the government failed to produce the photo array itself until the eve of the hearing, and the document it produced raised questions about whether it was in fact used in the identification procedure or was produced subsequently. *Cross*, 2009 WL 3233267, at *7-*8. Under such circumstances, Judge Irizarry found the government had not proved the photo identification had actually occurred. *Id.* Similarly, here, the government is relying on testimony from Detective Harkins that he reviewed certain documents in order to identify Mr. Courtney and establish his knowledge of Mr. Courtney's alleged gang membership and criminal history. Because the government did not produce the underlying documents, the defense was unable to use them for cross-examination. The Court should accordingly draw an adverse inference as to what the underlying documents in fact show, in light of the government's failure to produce them, or, at a minimum, order the government to disclose the documents now so that they can be evaluated and incorporated into the record and oral argument.

We intend to raise our other arguments concerning suppression in the oral argument set for Tuesday, August 12, 2025.

3

The Honorable Hector Gonzalez
August 8, 2025

                                                  Respectfully submitted,

                                                  */s/ Noam Biale*
                                                  Noam Biale
                                                  Alexandra Conlon

                                                  *Attorneys for Storm Courtney*


cc:      AUSA Andrew Roddin (by ECF)
          AUSA James Simmons (by ECF)